RODGERS, Presiding Justice.
The appellant, MFC Services (AAL) Corporation, has appealed to this Court from a decree of the Chancery Court of the First Judicial District of Hinds Coupty, Mississippi, in which the chancery court affirmed an order entered by the Mississippi Air & Water Pollution Control Commission commanding the appellant to cease the discharge of all waste into the waters of the State of Mississippi. The appellant contends on appeal that it was entitled to a tolerance permit exempting the operation from the cease and desist order or pollution control until such time as it could repair or enlarge its waste disposal plant. The Commission interpreted the law to mean that the appellant was a new industry and that the Commission could not issue a new plant a tolerance permit since it had not been previously polluting the waters of this state.
These are the facts leading up to this dispute: The appellant purchased a poultry processing plant located near McComb, Mississippi, from Adams Dressed Poultry, Inc. in the year 1971. This plant had been operated by Adams Dressed Poultry, Inc. as a poultry processing plant for many years. Adams had prepared a waste system used in connection with its operation composed of two (2) lagoons, one being an anaerobic lagoon of approximately four (4) feet in depth, and one-half (%) acre in size. From this lagoon the water flowed into a holding pond which was an old gravel pit of an average of forty (40) feet in depth and five (5) or six (6) acres in size. The waters were here contained by evaporation and sinking into the ground. There was no discharge into the waters of the state. Nevertheless, a tolerance permit had been issued by the Commission to Adams Dressed Poultry, Inc., on September 5, 1969, authorizing the operation of their disposal system.
Prior to September 1, 1971, when the appellant began operation, it requested a tolerance or indulgence permit to protect appellant against prosecution because of seepage and intermittent overflow into a natural dry creek bed. Permit No. 000911 was issued to the appellant, but this permit expired October 31, 1971. Thereafter, without notice to appellant, an order was entered on February IS, 1972, commanding the appellant to cease permitting waste water to escape from its lagoon. Whereupon, appellant requested a hearing and asked the Commission for a tolerance permit for the purpose of determining how the waste *18 water could be contained, and time in which to remedy the situation. The Commission entered a second order dated April 19, 1972. This order made no finding of fact as to how the alleged escape of water violated the law, nor did it make any finding of fact as to what was expected to remedy the situation, but simply again ordered the appellant to cease the discharge of all water until the waste water was treated in some unnamed manner to be approved by the Commission. The order required the appellant to immediately obtain engineering reports as to how the water was to be treated. The appellant was then ordered to deliver final plans by October 1, 1972, and that prior to March 1, 1973, the waste water disposal was to begin operation.
In May, 1972, the appellant again filed formal application for a permit and asked for a hearing on the amended order.
Testimony was introduced to show that after the first application had been denied appellants, the rainfall in the area increased to such an extent that the county in which the plant is located was declared a disaster area by the federal government. The record shows that the commissioners knew that the overflow from the gravel pit was in fact an accident. They were of the opinion that they had no authority to issue a tolerance permit to the appellant because it was a new operation.
We are of the opinion that the Commission was in error in its interpretation of the law, and that it did have authority to indulge the appellant for such time as was reasonably necessary to either treat the waste water in a manner required [and of which the appellant was entitled to be advised before cease and desist orders were entered], or to have time in which to remedy the situation where the rainfall caused the temporary discharge of waste water.
The pertinent part of Mississippi Code 1942 Annotated Section 7106-116 [now Mississippi Code Annotated Section 49-17-17 (1972)], isas follows:
“The commission shall have and may exercise the following powers and duties :
‡ ‡ H5
(m) 'To issue, continue in effect, revoke, modify or deny, under such conditions as it may prescribe, to prevent, control or abate pollution, permits for the discharge of contaminants and waste into the air and waters of the state,
[[Image here]]
It is unreasonable to require immediate compliance with a cease and desist order to stop overflow of waste water caused by an accident such as a flood, and this is true regardless as to how long a plant has been operating. No one can stop a flood by an order of a commission. The Mississippi Air and Water Pollution Control Act must be construed so as to give industry and minicipalities a reasonable opportunity to repair accidents and to bring their operations within the strict requirements of the law.
The issue here is not whether or not the appellant could expel waste water into a natural drain, but, rather, whether or not the appellant was entitled to a permit of indulgence from the Commission pending a reasonable opportunity to treat the waste water or to contain it. We think that the appellant should have been given such a permit.
The Commission made no finding of fact as is required of it by law [Ch. 258, § 10 (1966) Miss.Gen.Laws 282, at 292-293] and by decisions of this Court [Mississippi Power Company v. Mississippi Public Service Commission, Miss., 291 So.2d 541, 1974; Fortune Furniture Mfg. Co., Inc. v. Sullivan, 279 So.2d 644 (Miss.1973)]. Therefore, we have only the conclusion of the Commission that appellant was violating the law. This is not a sufficient finding of fact.
*19 We were told in the argument by counsel that the overflow has been repaired, and the only issue now is whether or not appellant can be liable in its super-sedeas bond. We think appellant was enti-tied to the’tolerance permit and that appellant is not liable on its appeal bond during the time required to repair the lagoon so as to treat or contain the waste water.
Judgment of the chancery court is therefore reversed, and judgment entered here in favor of appellant.
Reversed and rendered.
PATTERSON, SMITH, ROBERTSON and BROOM, JJ., concur.